IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Jackie Lee Chambers, ) | | |
|    Petitioner, ) | | |
| ) | | |
| v. ) | 1:15cv646 (AJT/TCB) | |
| ) | | |
| Eric D. Wilson, ) | | |
|    Respondent. ) | | |

[FILED FEB 24 2016 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA]

## MEMORANDUM OPINION

Jackie Lee Chambers, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, claiming that he was not afforded due process during an administrative inmate disciplinary proceeding. As relief, petitioner seeks expungement of the incident report charging him with a disciplinary infraction and an order directing the Bureau of Prisons ("BOP") from retaliating against petitioner.[1] Respondent filed a Motion for Summary Judgment on September 8, 2015, and petitioner has responded. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion for Summary Judgment must be granted, and final judgment will be entered in his favor. Petitioner's pending motions will be denied, as moot.

### I. Background

On April 4, 2007, after being convicted of Possession with the Intent to Distribute Cocaine Base, Possession of a Schedule II Controlled Substance, Making False, Fictitious and Fraudulent Statements, and being a Felon in Possession of Firearms, petitioner was sentenced to

---

[1] Petitioner also requests this Court to "issue a finding of fact that J.F. Caraway . . . did knowingly and willfully "stultify" [sic] and "breach" a purported security agreement. See Pet. at 3. Petitioner seeks similar relief against Charles E. Samuels, Director the Bureau of Prisons. Throughout his petition and his extensive filings, petitioner invokes language commonly used by inmates who are part of the "Sovereign Citizen Movement." As discussed herein, petitioner's claims against BOP officials for purported breach of a security agreement are not cognizable claims in this habeas proceeding, and those claims must be dismissed.

a 324-month term of imprisonment following by eight (8) years supervised release by the United States District Court for the Western District of Oklahoma. See United States v. Chambers, Case No. 5:06-cr-151-C (W.D. Okla.). On December 5, 2008, petitioner's sentence was reduced to a 262-month term of imprisonment. Id. On December 15, 2011, petitioner's sentence was further reduced to 168 months. Id.

The disciplinary proceedings that gave rise to the instant petition occurred while petitioner was housed at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"). On November 5, 2014, petitioner was transferred to the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg"). Dkt. No. 11, Schelder Decl. at ¶ 5. He has remained at FCC Petersburg since that time. Id. According to the BOP Inmate Locator accessed online, petitioner's projected release date is August 20, 2018.

On August 27, 2014, petitioner was issued an incident report charging him with a violation of BOP disciplinary code 196, use of mail for an illegal purpose. Id. at ¶ 6; Pet. at 1. The incident report noted that on August 27, 2014, BOP staff reviewed correspondence mailed by petitioner to the petitioner's sentencing judge, the Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma. Id. Judge Cauthron forwarded the correspondence to the BOP via the United States Marshals Service. Id. BOP staff reviewed the correspondence, which revealed that petitioner had mailed a fraudulent financing statement in the form of a bonded promissory note payable by the United States Treasury to Judge Cauthron in an effort to discharge the fines associated with his criminal case. Id.; see also Dkt. No. 1, Att. 1 at 20. Petitioner had authored a letter, which stated:

> "Please find enclosed Bonded Promissory Note No. 701229200000230015150 issued for the purpose of terminating/discharging all debts, obligations, and or liabilities (past, present or future) lodged against JACKIE LEE CHAMBERS . . .

2

Account/Case No. 5:06-cr-00151, and any/all accounts subsequent to/or deriving therefore."

Id.; see also Dkt. No. 1, Att. 1 at 19.

The incident report was delivered to petitioner on August 28, 2014, one day after it was written.[2] Specifically, BOP Lieutenant R. Clemons personally delivered the incident report to petitioner. Dkt. No. 11, Clemons Decl. at ¶ 4. Lieutenant Clemons acknowledged that he made an error in recording the month on the report as "September," when in fact he meant to write "August." Id. Furthermore, Lt. Clemons states in Section 24 of the incident report that on "August 28, 2014, at approximately 9:30 a.m., inmate Chambers, Jackie #16305-064 was advised of his rights and given a copy of the incident report, and stated that he understood his rights." Id. at ¶ 5.

On September 4, 2014, petitioner appeared before the Unit Disciplinary Committee ("UDC") to answer for the charges against him. Dkt. No. 11, Schleder Decl. at ¶ 8. Based upon the seriousness of the offense, the UDC referred the matter to the institution's Disciplinary Hearing Officer ("DHO") for further proceedings. Id. On the same day, petitioner was given written notice that he would appear before the DHO. Id. at ¶ 9. Along with notice of the hearing, petitioner received notice of his rights at the upcoming hearing, including the right to: (1) have a written copy of the charge against him at least 24 hours prior to appearing before the DHO; (2) have a staff representative; (3) call witnesses and present documentary evidence on his behalf; (4) present a statement or remain silent; (5) be present at the hearing; (6) be advised of the DHO's decision; (7) appeal the DHO's decision. Id. at ¶ 10. He acknowledged having received notice of the hearing and of his rights by signing the notice form. Id. at ¶ 9-10.

---

[2] The original incident report contained an error in Section 15 of the report that lists the date the report was delivered to petitioner. Dkt. No. 11, Schleder Decl. at ¶ 7. The original report indicated the incident report was delivered to petitioner on September 28, 2014; however the report was actually delivered to petitioner on August 28, 2014, one day after it had been written. Id.

3

Petitioner indicated that he did not wish to have a staff representative present at his hearing and that he did not wish to have any witnesses testify on his behalf. Id. at ¶ 9.

On September 18, 2014, petitioner appeared before the DHO. Id. at ¶ 11. Petitioner again waived his right to a staff representative and did not request any witnesses. Id. At the DHO hearing, petitioner confirmed that he had received his copy of the incident report. Id. at ¶ 12. Also during the hearing, the DHO determined that the charge of Code 219A, attempting to steal, was more closely supported by the evidence. Id. Thus, the DHO lowered the charge from Code 196, use of mail for an illegal purpose, to Code 219A. Id. Petitioner told the DHO that he was attempting to get his record clean by having his debt to society paid and that the promissory note he submitted to Judge Cauthron was backed by his personal account held by the government. Id. at 13. Petitioner argued that he should be absolved from any legal liability based upon a disclaimer on the note. Id. The DHO considered petitioner's verbal and written statements, and he subsequently outlined specific evidence to support the findings in his report. Id.

The DHO also considered documentary evidence,[3] including a copy of the correspondence petitioner had mailed to Judge Cauthron. Id. at ¶ 14. The promissory note, which petitioner had signed and dated, was to be paid to the order of Jacob Lew, U.S. Secretary of the Treasury, for credit to his criminal case in the amount of $5,805,000.00. Id. Petitioner's only defense was that he wrote "void where prohibited by law" at the bottom of the promissory note, and he claims that relieved him of any wrongdoing. Id.

After considering all the evidence, the DHO concluded:

---

[3] The DHO also considered that the Treasury Department's Office of the Inspector General has issued numerous alerts to banks in reference to promissory notes drawn or backed by the U.S. Treasury and has determined them to be fraudulent. See Dkt. No. 11, Schleder Decl. at ¶ 15.

> Your claim that there is not an order to pay, merely a promise to pay, was also found to be a weak attempt to avoid consequences for this. The fact is, the tenor of the letter, as well as your promissory note is demanding, and also gives the impression that if they do not comply with your submission in a timely manner they will legally accept your submission regardless. You clearly listed a huge sum of money to be paid to a specific list of people in the District Court to relieve you of your supposed debt. By basing this sum of money on a non-existent fictitious account . . . [y]ou attempted to steal money by attempting to have money paid which you did not have, or had no legal access to.

Id. at ¶ 16. Thus, the DHO found that petitioner intended to send the fraudulent promissory note to Judge Cauthron in order to have money paid on his behalf from a treasury account that did not exist to satisfy criminal debts. Id.

Consequently, after finding petitioner responsible for the disciplinary infraction, the DHO imposed administrative sanctions against him: (1) disallowance of 27 days of good conduct time ("GCT"); and (2) loss of commissary privilege for three (3) months. Id. at ¶ 17. The DHO reasoned that the action or behavior of an inmate in stealing or attempting to steal anything "creates the potential for conflict between individuals, which interferes with the effective operation of the institution." Id. at ¶ 18 ("Stealing cannot and will not be tolerated in this environment" and "sanctions imposed by the DHO were taken to let [petitioner] know that he, and he alone, will be held responsible for his actions/behavior at all times."). On November 17, 2014, petitioner received a copy of the DHO report. Id. at ¶ 19.

Petitioner was notified that he could appeal the DHO's findings through the BOP's Administrative Remedy Procedures within twenty (20) calendar days. Id. at ¶ 20. Petitioner timely appealed the DHO's decision to the BOP's Mid-Atlantic Regional Director. See Dkt. No. 1, Att. 1 at 2. On January 23, 2015, the Regional Director affirmed the DHO's decision. Id. at 4. Petitioner then appealed that decision to the BOP's General Counsel, which appears to have denied the appeal – the last step in the administrative remedy process. Id. at 5.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.[4] The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Celotex, 477 U.S. at 324 (quoting Rule 56(e)) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by [other evidence] designate 'specific facts showing that there is a genuine issue for trial.'"). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the

---

[4] Respondent moved both for dismissal of Chambers' petition and alternatively for summary judgment. Because respondent relies on evidentiary material, the Court finds it appropriate to review its position pursuant to the standard of review for summary judgment requests.

entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Therefore, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587.

### III. Analysis

#### A. Due Process Claims

It is well-settled that prisoners may claim the Due Process protections in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." Id. at 556. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. The Supreme Court has explained:

> The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action. Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily. This interest, however, must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Consequently, in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation.

Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-55 (1985) (citations omitted).

Prisoners possess the following due process rights when a protected liberty interest is at stake: (1) written notice of the charges against them at least 24 hours in advance of the hearing; (2) the opportunity to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the evidence relied upon and the reasons for taking disciplinary action. See Wolff, 418 U.S. at 563-67. The fact-finder's decision at a prison disciplinary hearing must be supported by "some evidence" in the record in order to satisfy a prisoner's due process rights. Hill, 472 U.S. at 455. As long as this standard of proof is met, a federal court will not disturb a disciplinary board's ruling. Id. To the extent the ruling may be administratively appealed, a prisoner has no federal due process rights in the appeal process. Brown v. Angelone, 938 F. Supp. 340, 345 (W.D. Va. 1996) (holding that violations of prison disciplinary appeal procedures do not implicate federal due process rights).

In accordance with the Supreme Court's decision in Wolff, each of the requirements was met in petitioner's case. First, petitioner received written notice of the charges against him within at least 24 hours in advance of the hearing. On August 27, 2014, BOP correctional staff wrote an incident report charging petitioner with committing the prohibited act code 196, using the mail for an illegal purpose. Dkt. No. 11, Schleder Decl. at ¶¶ 6-7. Petitioner was given a copy of the incident report the next day. Id. In his petition, petitioner claims that his due process rights were violated because the incident report indicates the report was not delivered to him until a month later, on September 28, 2014. Dkt. No. 1 at 2. However, the original incident

8

report contained a typographical error, which was later corrected to accurately reflect that the report was in fact delivered to petitioner on August 28, 2014, not in September. Id. at ¶ 7.

In fact, petitioner himself signed an acknowledgement that he has the right to receive a copy of the charges against him at least 24 hours before appearing before the DHO, and he did not alert the UDC or the DHO that he had not received a copy of the incident report prior to either hearing. Id. at ¶ 10. Additionally, a review of the summary of petitioner's statement to the DHO demonstrates that petitioner stated he received a copy of the incident report. Id. at ¶ 12. Additionally, Lieutenant Clemons personally delivered the incident report to petitioner on August 28, 2014, and has provided a sworn statement that he recorded the date as "September" in error. Dkt. No. 11, Clemons Decl. at ¶ 4. Petitioner's bald assertion that he did not receive the incident report on August 28, 2014 is simply unsupported by the record evidence; the evidence clearly demonstrates that petitioner did in fact receive the incident report on August 28, 2014, well in advance of 24 hours before the DHO hearing on September 18, 2014.

Second, petitioner was given the opportunity to call witnesses and present documentary evidence; however, he elected not to do so. Dkt. No. 11, Schleder Decl. at ¶¶ 9, 11. Petitioner submitted a written statement and made a verbal statement at his DHO hearing, both of which were considered by the DHO in rendering his decision. Id. at ¶ 13. Therefore, the second prong of the Wolff test was satisfied as petitioner was clearly given the opportunity to call witnesses and present documentary evidence.

Finally, petitioner received a written statement of the evidence relied upon and the reasons for the disciplinary action taken. On November 17, 2014, petitioner was given a copy of the DHO report. Id. at ¶ 19. In Section V of the DHO report, the DHO described the specific evidence relied upon to establish that petitioner had committed the prohibited act of attempting

to steal, in violation of BOP code 219A. Id. at ¶ 13. The DHO considered petitioner's written and oral statements, as well as the incident report and the actual correspondence that petitioner had mailed to Judge Cauthron. Id. at ¶¶ 13-14. Petitioner never denied that he mailed the fraudulent promissory payable by the U.S. Treasury note to Judge Cauthron in an effort to satisfy his criminal fines. His only defense was that he wrote "void where prohibited by law" at the bottom of the note and that he therefore would be relieved of any wrongdoing. Id. at ¶ 13. After reviewing the initial charge of use of the mail for an illegal purpose, the DHO decided to find petitioner guilty of the lesser offense of attempting to steal, which carried significantly less sanctions than the original charge. Id. at ¶ 12.

The DHO determined that the evidence primarily demonstrated that petitioner attempted to use a fraudulent financial document to steal from the U.S. Treasury in order to pay his criminal fines. The fact that the scheme may never have worked to his benefit is irrelevant. The argument that no reasonable person would have believed the financial instrument was real and that the Treasury would not have actually paid off the debt does not negate petitioner's wrongful act. The DHO report specifically explained why sanctions were being imposed on petitioner. Id. at ¶ 18. Thus, the third and final prong of the Wolff test is satisfied because a written statement explaining the reasons for sanction and stating the evidence relied upon was given to petitioner.

The DHO's reasoning is supported by the record evidence and should not be disturbed by the Court as it is well-settled that the fact-finder's decision at a prison disciplinary hearing must only be supported by "some evidence" in the record in order to satisfy due process. Hill, 472 U.S. at 455. Clearly, this standard of proof has been met, and petitioner was afforded all due process to which he was entitled. Accordingly, as no material facts are genuinely disputed and

the evidence as a whole could not lead a rational finder of fact to rule for the petitioner in this case, respondent is entitled to the summary judgment he seeks. Matsushita, 475 U.S. at 587.

B. Petitioner's Breach of Security Agreement Claims

In addition to challenging the imposition of disciplinary charges against him, petitioner requests an impartial review of a purported breach of a security agreement between him and several BOP officials. The function of a writ of habeas corpus is "to secure release from illegal detention." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). This has evolved to where a writ of habeas corpus can be used to "effect discharge from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to conviction by a court of competent jurisdiction." Id. at 485; see also 28 U.S.C. § 2241(c)(3). Petitioner's claims grounded in commercial law and secured transactions, even if they exist, are not cognizable under § 2241. Therefore, he is not entitled to habeas relief on these claims, and they must be dismissed.

### IV. Conclusion

For the above-stated reasons, respondent's Motion for Summary Judgment will be granted, and this petition will be dismissed, with prejudice. Respondent's Motion to Dismiss will be denied, as moot. An appropriate order shall issue.

Entered this 24th day of February 2016.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia